# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| KIMBERLY K. L.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 19-1004-JWL |
| ANDREW M. SAUL,[2] ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

# MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614(a) of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a) (hereinafter the Act). Finding error in the Administrative Law Judge's (ALJ) failure to evaluate the opinion of Dr. Steventon, who examined Plaintiff at the request of the Commissioner, the court ORDERS that the final decision shall be REVERSED and that judgment shall be entered pursuant to the fourth

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.
[2] On June 17, 2019, Andrew M. Saul was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceeding consistent with this decision.

I.  **Background**

Plaintiff filed applications for DIB and SSI on August 4, 2014. (R. 230-42). At the hearing Plaintiff amended her onset date to July 28, 2012. Id. at 35. After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff argues that the ALJ erred in accepting the vocational expert (VE) testimony without explaining why he accepted the testimony that was inconsistent with the Dictionary of Occupational Titles (DOT). She argues that the ALJ erred in evaluating the medical opinion of Plaintiff's treating physician, Dr. Slomka, both by applying an incorrect standard and by according his opinion insufficient weight.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as

2

adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or

3

equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

**II.     Discussion**

Plaintiff argues that Dr. Slomka treated Plaintiff from September 6, 2012 through the date of the ALJ hearing, July 12, 2017, that the Commissioner requires a particular procedure to evaluate a treating physician's opinion, and that the ALJ did not follow that procedure. She argues that Dr. Slomka opined that Plaintiff is a candidate for disability but that the ALJ erroneously accorded no weight to this opinion. (Pl. Br. 10) (citing R.

4

21, 462). She argues that Dr.Slomka's opinion is supported by the objective evidence including the report of an examination made by Dr. Steventon. Id. at 10-11 (quoting R. 446). In response, the Commissioner argues that Dr. Slomka did not render a "medical opinion" within the meaning of the Act and regulations and it was not error for the ALJ to accord that opinion no weight. He argues that in any case the ALJ provided good reasons to discount Dr. Slomka's opinion.

## A. The ALJ's Findings

The ALJ summarized Plaintiff's treatment with Dr. Slomka and the other treatment providers at the Ellsworth Medical Clinic. (R. 19-21) (citing Exs. 13F, 16F, 17F). She noted that in 2012 and 2013 Plaintiff was treated primarily for a broken right wrist and associated pain and "she failed to report experiencing any additional physical complaints." (R. 19) (citing Ex. 13F/15). She noted that in 2014 the only treatment recommended for Plaintiff's breathing problems was medications, inhaler, and nebulizer. Id. at 20. She recognized treatment with Dr. Slomka in February 2015 when Plaintiff

> presented to her providers for completion of her disability paperwork and reported that she was experiencing increasing back pain and depression (Ex. 13F/7). However, notably, while her provider reported that the claimant's back and neck pain (according to her) did make it substantially difficult for her to obtain gainful employment, upon examination, this provider noted that her neck was supple and showed no tenderness, her gait was normal and strength remained five out of five (Ex. 13F/8).

(R. 20). She noted, "This presentation continued throughout 2015 and 2016, as providers continued to find the claimant physically stable and in no acute distress (Ex. 16F/12, 17F/5, 20)." Id. She later continued, "while the claimant did continue to report to her providers with the occasional complaints of depression, her providers recommended

5

nothing more than medications and mental health counseling, both of which the claimant refused to follow (Ex. 17F/9, 21)." Id. at 21

The ALJ addressed the medical opinion evidence and accorded great weight to the medical opinion presented by non-treating psychologists, Mr. Walters and Dr. Davis; great weight to the opinion of non-examining state agency psychologist, Dr. Adams; great weight to the opinion of non-examining state agency physician, Dr. Coleman; partial weight to the opinion expressed by psychologists, Mr. Walters and Dr. Davis in a second report of examination; and partial weight to the opinions of non-examining state agency psychologist, Dr. Schulman and state agency physician, Dr. Kaur. (R. 21) (citing Exs. 12F, 4A, 15F, 8A). She explained why she assigned no weight to Dr. Slomka's opinion:

> Yet, no weight is assigned to the opinion of the claimant's provider, Jerzy Slomka, M.D. who opined that the claimant['s] chronic back and neck pain would make it substantially difficult for her to obtain gainful employment and opined that she is a candidate for disability, as his opinion of the claimant failed to comport with his physical findings, in which he found her with normal strength and normal gait (Ex. 13F).

(R. 21).

### B. <ins>Standard for Evaluating Medical Opinions</ins>

For claims filed before March 17, 2017, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources[3] that reflect judgments

---

[3]The regulations define three types of "acceptable medical sources:"

"Treating source:" an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship. 20 C.F.R. §§ 404.1502, 416.902.                                                              continued …

6

about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). Such opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations. Id. §§ 404.1527(c), 416.927(c); Soc. Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2019). A physician who has treated a patient frequently over an extended period (a treating source) is expected to have greater insight into the patient's medical condition, and his opinion is generally entitled to "particular weight." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). But, "the opinion of an examining physician [(a nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)). However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

---

"Nontreating source:" an "acceptable medical source" who has examined the claimant, but never had a treatment relationship. Id.
"Nonexamining source:" an "acceptable medical source" who has not examined the claimant, but provides a medical opinion. Id.

7

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2019) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p). The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p). If the opinion is well-supported, the ALJ must confirm that the opinion is also consistent with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

If the treating source opinion is not given controlling weight, the inquiry does not end. Id. A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as

8

a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).

After considering the factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion. Id. 350 F.3d at 1301. "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### C. Analysis

As noted above, the court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax, 489 F.3d at 1084; White, 287 F.3d at 905. Here, the court finds that the ALJ did not consider, weigh, and explain the weight given every medical opinion in the record as required by the regulations cited above. Specifically, the court finds that Dr. Steventon with the Southern Medical Group examined Plaintiff on November 15, 2014 at the request of the agency and provided a report of that examination to the agency. (R. 444-49). In her report, Dr. Steventon provided the following conclusions.

> Based on today's examination and the objective evidence, I believe the claimant should be able to sit, walk, and/or stand for a full workday at a job requiring minimal physical activity due to her neck and back pain. She will not be able to lift/carry objects over 25-30 pounds continuously, would be able to carry objects 20 pounds occasionally and 10 pounds continuously.

> She is able to hold a conversation, respond appropriately to questions, carry out and remember instructions.

(R. 446). The ALJ assessed Plaintiff with the RFC to "lift, carry, push, and/or pull fifty pounds occasionally, twenty-five pounds frequently." (R. 18). The ALJ's assessment of exertional limitations is inconsistent with Dr. Steventon's opinion regarding exertional limitations, and as such requires an explanation why the ALJ did not adopt Dr. Steventon's opinion. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 150 (Supp. 2019). Moreover, the decision does not indicate the ALJ considered or weighed Dr. Steventon's opinion. In fact, there is neither mention of, nor citation to Dr. Steventon's report (Ex. 11F) anywhere in the decision of this case. This is inexplicable. The ALJ stated she had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927." (R. 18). As summarized above, the ALJ evaluated and explained her evaluation of seven medical opinions contained in the record. Id. at 21. And, Dr. Steventon's opinion is by no means an obscure medical opinion difficult to discover within the record evidence. Rather, it is a separate exhibit, 11F, listed in the index as the examination report of Dr. Steventon. (R. Index 3).

Although Plaintiff did not argue that the ALJ's failure to weigh Dr. Steventon's opinion and explain the weight accorded is error, she did argue that Dr. Steventon's opinion supports Dr. Slomka's opinion, and she quoted the relevant conclusion from Dr. Steventon's report. (Pl. Br. 10). The court is required to consider whether the Commissioner applied the correct legal standard, and on the face of Plaintiff's Brief and the record in this case it is clear the ALJ did not properly address Dr. Steventon's

opinion. And, despite Plaintiff's quotation of Dr. Steventon's conclusion and the Commissioner's citation to portions of Dr. Steventon's report (Comm'r Br. 2) (citing R. 442, 444-47), the Commissioner did not attempt to distinguish Dr. Steventon's conclusions or explain how they could be interpreted as consistent with the ALJ's findings. Remand is necessary for the Commissioner to consider and weigh Dr. Steventon's opinion.

**IT IS THEREFORE ORDERED** that the Commissioner's decision shall be REVERSED and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING this case for further proceeding consistent herewith.

Dated November 13, 2019, at Kansas City, Kansas.

s:/ John W. Lungstrum<br>
**John W. Lungstrum**<br>
**United States District Judge**